Philip D. Stern, Esq.
Philip D. Stern Attorney at Law LLC
697 Valley Street, Suite 2d
Maplewood, NJ 07040
(973) 379-7500
Representing Plaintiff, Susan L. Sands

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUSAN L. SANDS,<br>Plaintiff,<br><br>vs.<br><br>DYNIA & ASSOCIATES, LLC, ALFRED S. DYNIA, ANTHONY CREWS, GREG NEELY, MICHAEL PROWICZ, AHMAD MERRITT, and<br>FICTITIOUS 1-10,<br>Defendants. | **CLASS ACTION COMPLAINT** |

Plaintiff, Susan L. Sands, individually and on behalf of all others similarly situated, by way of Complaint against Defendants, Dynia & Associates, LLC, Alfred S. Dynia, Anthony Crews, Greg Neely, Michael Prowicz, Ahmad Merritt, and Fictitious 1-10, says:

### I.  NATURE OF THE ACTION

1. This action stems from the Defendants' conduct when attempting to collect consumer debts violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. by leaving voice mail messages which tended to harass, oppress or abuse and which were false, deceptive and misleading because they failed to make required disclosures.

### II.  PARTIES

2. Susan L. Sands (SANDS) is a natural person.

3. At all times relevant to the factual allegations of this Complaint, SANDS was a citizen of the State of New Jersey, residing in Somerset County, New Jersey.

4. At all times relevant to the factual allegations of this Complaint, Dynia & Associates (D&A) is a for-profit member-managed Illinois limited liability company managed by Alfred S. Dynia with located at 4849 N. Milwaukee Avenue, Suite 801, Chicago, IL 60630.

5. Alfred S. Dynia (DYNIA) is a natural person who, on information and belief, resides in the City of Chicago, Cook County, Illinois and, at all times relevant to these allegations, was employed on a fulltime basis by D&A as its Managing Member.

6. Anthony Crews (CREWS) is a natural person who, on information and belief, resides in the City of Naperville, DuPage County, Illinois and, at all times relevant to these allegations, was employed on a fulltime basis by D&A as its Chief Operating Officer.

7. Greg Neely (NEELY) is a natural person who, on information and belief, resides in the Village of Hainesville, Lake County, Illinois and, at all times relevant to these allegations, was employed on a fulltime basis by D&A as its Executive Director.

8. Michael Prowicz (PROWICZ) is a natural person who, on information and belief, resides in the Village of Hampshire, Kane County, Illinois and, at all times relevant to these allegations, was employed on a fulltime basis by D&A as its Director of Collections.

9. Ahmad Merritt (MERRITT) is a natural person who, on information and belief, resides in the Village of Lake Bluff, Lake County, Illinois and, at all times relevant to these allegations, was employed on a fulltime basis by D&A as its Director of Client Services.

10. FICTITOUS 1-10 are one or more natural persons whose names are yet unknown but who, on information and belief, reside in the United States of America and, as alleged below, are liable to SANDS.

### III. JURISDICTION AND VENUE

11. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

12. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to SANDS's claims occurred within this federal judicial district, and because DYNIA regularly transacts business within this federal judicial district and, therefore, resides in the State of New Jersey

within the meaning of 28 U.S.C. § 1391(b) and (c).

### IV. LEGAL BASIS FOR FAIR DEBT COLLECTION PRACTICES ACT CLAIMS

***First.*** The FDCPA "was passed to promote ethical business practices by debt collectors." *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002). The Act was necessary because existing consumer protection laws were inadequate as demonstrated by abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors which contributed to the number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a) and 1692(b). Thus, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, ***and*** to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S. Ct. 1605, 1623, 176 L. Ed. 2d 519 (2010) (internal quotes and ellipsis omitted; emphasis added); 15 U.S.C. § 1692(e).

***Second.*** The Act is not concerned with whether the consumer owes the debt. "Congress recognized that 'the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness or marital difficulties or divorce.'" *FTC v. Check Investors, Inc.,* 502 F.3d 159, 165 (3d Cir. 2007). Nevertheless, "'[a] basic tenet of the Act is that *all* consumers, *even those who have mismanaged their financial affairs resulting in default on their debt*, deserve 'the right to be treated in a reasonable and civil manner.'" *FTC, supra,* 502 F.3d at 165 (emphasis added) quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997).

***Third.*** "Congress also intended the FDCPA to be self-enforcing by private attorney generals [sic]." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); and, see, *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055 (9th Cir. 2011).

*Fourth.* The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455. Furthermore, except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing, in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

*Fifth.* The FDCPA creates no special exceptions for attorneys – even when that conduct falls within conduct traditionally performed only by attorneys. *Heintz v. Jenkins*, 514 U.S. 291 (1995). For example, there is no "litigation privilege" for debt collecting attorneys. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007). "Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of that Act." *Piper v. Portnoff Law Associates*, 396 F.3d 227, 232 (3d Cir. 2005). Indeed, "[a]buses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Crossley v. Lieberman,* 868 F.2d 566, 570 (3d Cir. 1989).

*Sixth.* Liability under the FDCPA arises upon the showing of a single violation. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993).

*Seventh.* Liability under the FDCPA is excused *only* when a debt collector establishes, as an affirmative defense, the illegal conduct was either "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), or an "act done or omitted in good faith in conformity with any advisory opinion of the" Consumer Financial Protection Bureau, 16 U.S.C. § 1692k(e). Thus, common law privileges and immunities are not available to absolve a debt collector from liability under the FDCPA. See, *Heintz v. Jenkins*, 514 U.S. 21, (1995); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3rd Cir. 2011); and *Sayyed v. Wolpoff & Abramson*, 485 F. 3d 236, 232-233 (4th

Cir. 2007).

***Eighth.*** A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). The absence of actual damages is not a bar to such actions as "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n3 (1973). Indeed, Congress, through "the FDCPA[,] permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

***Ninth.*** The FDCPA also provides for class relief "capped" at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA." *Weiss, supra,* 385 F.3d at 345. Indeed, while limiting class relief, Congress nevertheless recognized the effectiveness of class actions to enforce the FDCPA and, therefore, mandated that a class action should be maintained "without regard to a minimum individual recovery." *Id.* When a debt collector opposes class certification based on its minimal or negative net worth, "there is a chance that no claims would proceed against Defendants due to a lack of financial incentive, thereby leaving unpunished allegedly thousands of FDCPA violations. This is exactly the kind of result Congress intended to avoid through the creation of the class action form." *Barkouras v. Hecker,* 2006 WL 3544585, 2006 U.S.Dist.Lexis 88998 (D.N.J. Dec. 8, 2006).

### v. FACTS

13. D&A:

    13.01. is regularly engaged in the collection of debts;

    13.02. the principal purpose of D&A is the collection of debts; and

    13.03. in attempting to collect debts, D&A uses the mails, telephone, the internet and other instruments of interstate commerce.

14. DYNIA:

    14.01. is regularly engaged in the collection of debts;

    14.02. the principal purpose of DYNIA is the collection of debts; and

    **14.03.** in attempting to collect debts, DYNIA uses the mails, telephone, the internet and other instruments of interstate commerce.

**15.** CREWS:

    **15.01.** is regularly engaged in the collection of debts;

    **15.02.** the principal purpose of CREWS is the collection of debts; and

    **15.03.** in attempting to collect debts, CREWS uses the mails, telephone, the internet and other instruments of interstate commerce.

**16.** NEELY:

    **16.01.** is regularly engaged in the collection of debts;

    **16.02.** the principal purpose of NEELY is the collection of debts; and

    **16.03.** in attempting to collect debts, NEELY uses the mails, telephone, the internet and other instruments of interstate commerce.

**17.** PROWICZ:

    **17.01.** is regularly engaged in the collection of debts;

    **17.02.** he principal purpose of PROWICZ is the collection of debts; and

    **17.03.** in attempting to collect debts, PROWICZ uses the mails, telephone, the internet and other instruments of interstate commerce.

**18.** MERRITT:

    **18.01.** is regularly engaged in the collection of debts;

    **18.02.** the principal purpose of MERRITT is the collection of debts; and

    **18.03.** in attempting to collect debts, MERRITT uses the mails,

>   telephone, the internet and other instruments of interstate commerce.

19. FICTITIOUS 1-10:

>   19.01. are natural persons who are regularly engaged in the collection of debts;
>
>   19.02. the principal purpose of each FICTITIOUS 1-10 is the collection of debts; and
>
>   19.03. in attempting to collect debts, FICTITIOUS 1-10 each use the mails, telephone, the internet and other instruments of interstate commerce.

20. On September 15, 2010, Discover Bank commenced an action ("State Action") against SANDS in the Superior Court of New Jersey, Law Division, Special Civil Part, Somerset County designated by Docket No. DC-007048-10.

21. In the State Action, Discover Bank had claimed $6,216.07 was due ("Debt") from SANDS on a credit card account.

22. SANDS had such an account with Discover Bank which she used for personal purposes.

23. After being served with process in the State Action, SANDS's prior counsel, Legal Services of Northwest Jersey, wrote to counsel for Discover Bank in September and October 2010 and explained that SANDS would not be filing an answer because she only had exempt income, owned no real estate, lived in affordable housing, was divorced, was 70 years old, and was disabled. Counsel also identified the institutions at which SANDS banked and requested that, in light of her financial circumstances, no effort be made to collect the Debt or execute upon any resulting judgment.

24. A judgment was entered in the State Action on or about November 19, 2010.

25. The Debt was placed with D&A on or before March 5, 2014 for the purpose of collection.

26. At the time the Debt was placed with D&A, the Debt was in default.

27. In an attempt to collect the Debt, D&A placed several telephone calls to SANDS beginning on or about March 8, 2014.

28. On March 24, 2014 at or about 10:50 AM (Eastern), D&A placed a telephone call to SANDS which was answered by SANDS's voicemail.

29. During that call, D&A left a voice message ("Message").

30. The Message was prerecorded or computer generated.

31. The Message stated:

> Hello. This important call is only for Susan Sands. This is regarding a personal business matter. It is important that we speak with you today. Press the nine key now to connect with a representative. Thank you.

32. The Message repeated a portion of the foregoing but did not identify D&A as the caller, state the purpose of the call or disclose that the message was from a debt collector.

33. The Message was spoken in a single pre-recorded or computer-generated voice except that the words "Susan Sands" were spoken in a different pre-recorded or computer-generated voice.

34. According to SANDS's voice messaging system, the message was left on March 24, 2014 at 10:50 AM and the caller ID number was 312-470-6653.

35. On information and belief, telephone number 312-470-6653 is a number used by D&A to collect debts.

36. On information and belief, by the use of certain telephone technology which attempts to distinguish between calls which are answered by a natural, called a "live connect," and calls which are answered by a telephone answering device, called a "machine connect," the form used by D&A to speak the word of the Message was intended play only when there was a live connect.

37. Nevertheless, if SANDS had personally answered the call (thereby making a "live connect"), the Message would have played but would have failed to identify D&A as the caller, state the purpose of the call or disclose that the call was from a debt collector.

**38.** By asking that SANDS press the nine key "to connect with a representative" is functionally the same as leaving SANDS a voicemail message to call D&A back by pressing a multiple-digit telephone number because, in both situations, SANDS would be using the telephone to "connect" with D&A's representative without knowing that she would be calling a debt collector.

**39.** All calls placed by D&A prior to the Message were disconnected by the caller before speaking with SANDS or leaving a voicemail message.

**40.** DYNIA, CREWS, NEELY, PROWICZ, MERRITT and FICTITIOUS 1-10 were each personally involved in one or more of the following activities with respect to leaving the message for SANDS:

 **40.01.** Drafting the words used in the message;

 **40.02.** Approving use of the words spoken in the message;

 **40.03.** Implementing the use of the message;

 **40.04.** Overseeing the use of the message; or

 **40.05.** Managing the use of the message.

### VI. POLICIES AND PRACTICES COMPLAINED OF

**41.** It is the D&A's policy and practice, as approved and implemented by DYNIA, CREWS, NEELY, PROWICZ, MERRITT and FICTITIOUS 1-10, to use pre-recorded or computer-generated messages substantially in the form of the Message while attempting to collect debts from consumers.

**42.** Such policy and practice is in violation of 15 U.S.C. §§ 1692d, 1692d(6), 1692e, 1692e(10) and 1692e(11).

### VII. CLASS ALLEGATIONS

**43.** SANDS brings this action individually and as a class action on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

**44.** Subject to discovery and further investigation which may cause Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff defines the "Class" as follows:

> Excluding persons who, prior to the date this action is certified to proceed as a class action, either (a) died,

(b) obtained a discharge in bankruptcy and none of the telephone calls described below were received after the date of discharge, (c) commenced an action in any court against any Dynia and Associates, LLC alleging a violation of the Fair Debt Collection Practices Act, (d) signed a general release of claims against Dynia and Associates, LLC, or (e) is a Judge assigned to this case or member of such Judge's staff or immediate family, the Class consists of:

> Each natural person to whom Dynia & Associates, LLC caused a telephone call to be placed during the Class Period to a telephone number including an area code assigned to New Jersey which call was answered by a natural person or a telephone answering device and a voice message was transmitted which failed to state either (i) that the call was from Dynia & Associates, LLC, (ii) that the purpose of the call was to collect a debt, (iii) that Dynia & Associates, LLC is a debt collector, or (iv) that the call was placed in an attempt to collect a debt and that any information obtained would be used for that purpose.

45.  Subject to discovery and further investigation which may cause Plaintiff to modify the following definition of the "Class Claims" at the time Plaintiff moves for class certification, Plaintiff defines the Class Claims as:

> Claims arising D&A's calls in which it transmitted a voice message which failed to state either (i) that the call was from D&A, (ii) that the purpose of the call was to collect a debt, (iii) that D&A is a debt collector, or (iv) that the call was placed in an attempt to collect a debt and that any information obtained would be used for that purpose.

46.  Subject to discovery and further investigation which may cause Plaintiff to modify the following definition of the "Class Period" at the time Plaintiff moves for class certification, Plaintiff defines the Class Period as the continuous time period beginning on the earliest date which is within one-year period immediately preceding the commencement of this action and ending either on the 21st day after D&A is served with process or on the day D&A executes a waiver of service pursuant to Fed.R.Civ.P. 4(d).

47.  Based on discovery and further investigation (including, but not

limited to, Defendants' disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Class, Class Claims, and the Class Period, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

48.   The identity of each member of the Class is readily ascertainable from D&A's records and those records of the entity on whose behalf D&A was seeking to collect debts. If D&A used a service vendor to place the calls which are the subject of this action, then the Class may also be identified by such service provider.

49.   This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

> 49.01. *Numerosity.* Plaintiff is informed and believes, and on that basis alleges, that the members of the Class are so numerous that joinder of all members would be impractical. On information and belief, there are more than 40 members of the Class.
>
> 49.02. *Commonality.* Common questions of law and fact exist as to all members of the Class, the principal issues are whether D&A's voice messages transmitted in telephone calls placed to consumers in an attempt to collect a debt [A] had the natural consequence to harass, oppress, or abuse any person in violation of 15 U.S.C. § 1692d, [B] failed to meaningfully identify the caller in violation of 15 U.S.C. § 1692d(6), [C] was false, deceptive or misleading in violation of 15 U.S.C. §§ 1692e, [D] failed to disclose either that the caller is a debt collector or that the call was placed in an attempt to collect a debt and that any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e(11), and [E] that, by leaving the message, Defendant used a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10).
>
> 49.03. *Typicality.* SANDS's claims are typical of the claims of the class members. SANDS and all members of the Class have claims arising out of the D&A's common and uniform course of conduct with respect to the voice messages transmitted during

    telephone calls placed to collect debts.

  **49.04.** *Adequacy.* SANDS will fairly and adequately protect the interests of the class members insofar as SANDS has no interests that are adverse to the absent class members. SANDS is committed to vigorously litigating this matter. SANDS has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. SANDS and SANDS's counsel have no interests which might cause them not to vigorously pursue the instant class action lawsuit.

**50.** This action may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid of any two or all three types however, at the time of commencing this action, Plaintiff expects to seek certification of a class under Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to members of the Class appear to predominate over any questions affecting an individual member, and a class action would be superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

### VIII. CAUSE OF ACTION FOR VIOLATIONS OF THE FDCPA

**51.** SANDS realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

**52.** D&A is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**53.** DYNIA is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**54.** CREWS is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**55.** NEELY is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

56. PROWICZ is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

57. MERRITT is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

58. FICTITIOUS 1-10 are each a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

59. SANDS is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

60. The Debt is a "debt" within the meaning of 15 U.S.C. §1692a(5).

61. The Message is a "communication" as defined by 15 U.S.C. § 1692a(2).

62. The Message was transmitted during a telephone call placed in an attempt to collect the Debt.

63. Use of the Message violated the FDCPA in one or more of the following ways:

> 63.01. The natural consequence of placing the telephone call in connection with the attempt to collect the Debt and transmitting the Message during the call which failed to identify D&A as the caller, that D&A is a debt collector, or state that the purpose of the call was to collect a debt is to harass, oppress, or abuse in violation of 15 U.S.C. § 1692d;
>
> 63.02. Placing a telephone call in connection with the attempt to collect a debt without identifying the name of the caller in violation of 15 U.S.C. §1692d(6);
>
> 63.03. Placing a telephone call without stating that the purpose of the call was to collect a debt in violation of 15 U.S.C. §1692d(6);
>
> 63.04. Placing a telephone call to a consumer which invited the caller to connect with the caller's representative by pressing the nine key without disclosing the caller's identity, the purpose of the call, that the caller is a debt collector, or that the caller was attempting to collect a debt and any information obtained would be used for that purpose is false, deceptive or misleading

in violation of 15 U.S.C. § 1692e;

63.05. Placing a telephone call to a consumer which invited the caller to connect with the caller's representative by pressing the nine key without disclosing the caller's identity, the purpose of the call, that the caller is a debt collector, or that the caller was attempting to collect a debt and any information obtained would be used for that purpose is false, deceptive or misleading in violation of 15 U.S.C. § 1692e(10); and

63.06. Communicating with a consumer without disclosing either that the communication was from a debt collector or that the communication was made in an attempt to collect a debt and any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e(11).

64. The Defendants acted in concert to use the Message in their attempt to collect the Debt.

65. Based on any one of those violations, Defendants are jointly and severally liable to Plaintiff for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k.

66. Based on any one of those violations, Defendants are jointly and severally liable to the Class for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k.

### IX. PRAYER FOR RELIEF

67. WHEREFORE, Plaintiff, Susan L. Sands, respectfully requests that the Court enter judgment against Defendant, Dynia & Associates, LLC, Alfred S. Dynia, Anthony Crews, Greg Neely, Michael Prowicz, Ahmad Merritt, and such FICTITIOUS 1-10 whose real names are subsequently identified, jointly and severally, as follows:

67.01. An order certifying that the Cause of Action may be maintained as a class pursuant to Fed. R. Civ. P. 23 including defining the class, defining the class claims, and appointing SANDS as the class representative and the undersigned attorney as class counsel;

67.02. An award of statutory damages for SANDS pursuant to 15

U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

67.03. An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

67.04. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

67.05. For such other and further relief as may be just and proper.

## X.  JURY DEMAND

68. Plaintiff, Susan L. Sands, demands a trial by jury on all issues so triable.

## XI.  CERTIFICATION PURSUANT TO LOCAL CIVIL RULE

69. Pursuant to L. Civ. R. 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

Philip D. Stern Attorney at Law LLC
Representing Plaintiff, Susan L. Sands
*s/Philip D. Stern*
Philip D. Stern

Dated: May 9, 2014